# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | | |
|---|---|---|
| SERGIO RAMIREZ, | § | |
| TDCJ # 1607413, | § | |
|     Petitioner, | § | |
| | § | |
| v. | § | |
| | § | EP-14-CV-51-PRM |
| WILLIAM STEPHENS, | § | |
| Director, Texas Department of | § | |
| Criminal Justice, Correctional | § | |
| Institutions Division, | § | |
|     Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Petitioner Sergio Ramirez's "Petition for a Writ of Habeas Corpus by a Person in State Custody" under 28 U.S.C. § 2254 (ECF No. 1),[1] originally filed in the United States District Court for the Southern District of Texas on October 11, 2013. In his petition, Ramirez, a state prisoner at the Beto Unit in Tennessee Colony, Texas, challenges Respondent William Stephen's custody over him based on a conviction in the 243rd Judicial District

---

[1] "ECF No." in this context refers to the Electronic Case Filing number for documents docketed in this case. Where a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the latter page numbers.

Court of El Paso County, Texas, for aggravated sexual assault of a child.[2]  Ramirez claims that the prosecutor, the trial court, and his trial counsel erred during the criminal proceedings brought against him.[3]  Respondent William Stephens responds that Ramirez's claims "lack merit" and asks the Court to deny the petition.[4]  Ramirez replies that he "stands behind his . . . grounds . . . [for] relief."[5]  After carefully reviewing the record and for the reasons discussed below, the Court concludes that Ramirez has failed to establish an entitlement to § 2254 relief.  The Court will accordingly deny Ramirez's petition and decline to certify his issues for appeal.

## BACKGROUND AND PROCEDURAL HISTORY

According to the trial transcript, on April 26, 2008, Alma Andrade left her seven-year-old daughter, V.M., at the home of her sister, Maria Vargas, in El Paso, Texas.  The next day, during a family gathering at the Vargas' house, V.M. went into her cousin Patty Vargas's room to

---

[2] *State v. Ramirez*, No. 20080D02324 (243rd Dist. Ct. El Paso Cnty., Tex. Oct. 5, 2009), *aff'd*, No. 08–09–00286–CR, 2011 WL 4067927 (Tex. App.—El Paso 2011, pet. ref'd).

[3] Pet'r's Pet. 6–7, Oct. 11, 2013, ECF No. 1.

[4] Resp't's Answer 1, June 13, 2014, ECF No. 14.

[5] Pet'r's Reply 2, July 16, 2014, ECF No. 15.

take a nap.  V.M. awoke when she felt a "finger . . . where you go number 2."[6]  When V.M. looked up, she saw Sergio Ramirez's face.[7] After the incident, Ramirez gave V.M. two dollars and told her not to tell her mother what had happened.

While doing laundry the following day, Andrade saw what she believed was blood on her daughter V.M.'s underwear.  Unbeknownst of what had taken place with her daughter, Andrade went ahead and washed the underwear.  After V.M. returned home from school, Andrade questioned her daughter about the blood.  Andrade recalls that V.M. first explained that she had hit herself on something at school.  After Andrade told V.M. to tell the truth, she told her mother that she was in her cousin Patty Vargas's room when Ramirez put his finger where she goes "number two."[8]  After a family discussion of the incident, V.M.'s sister called 911.

An El Paso Sheriff's Office deputy, Johnny Hernandez, responded to the 911 call.  After taking an initial report, Officer Hernandez arranged for an ambulance to take V.M. to a hospital for a medical

---

[6] Trial Tr., vol. 4, 98 (direct examination of V.M.).

[7] Trial Tr., vol. 4, 101 (direct examination of V.M.), 109–10 (cross-examination of V.M.).

[8] Trial Tr., vol. 2, 225 (direct examination of Alma Andrade).

examination.  Once at the hospital, Sexual Assault Nurse Examiner

Kathleen Justice conducted a medical examination of V.M. and located a

one millimeter tear in her anus caused by a blunt object coming into

contact with her skin. Nurse Justice believed V.M.'s injury was

consistent with a digital penetration of her anus.  Following a forensic

interview with V.M., an arrest warrant was obtained for Ramirez.

Ramirez agreed to an interview, but denied V.M.'s allegations.

A grand jury returned an indictment charging Ramirez with

aggravated sexual assault of a child.  He pleaded not guilty and

proceeded to trial.

During the trial, Andrade testified that her daughter, V.M., told

her on the day after the family gathering on April 27, 2008, that

Ramirez had touched her:

> Q.    And how did she respond when you told her to tell
>       you the truth?
> A.    She was a bit frightened, the child, but I talked to
>       her, told her not to be afraid, that nobody - - that
>       no  one  should  be  touching  her  parts,  and  if
>       someone has touched her, for her to tell me the
>       truth.
> Q.    And after you told her that, what did she say?
> A.    That her Uncle Sergio had touched her.
> Q.    Did you ask her where he had touched her?
> A.    Yes.
> Q.    And what was her response?
> A.    That she was in her cousin Patty's room; that her

Uncle Sergio had gone in there.  That's when he touched her.

Q.   Did you ask her when this had occurred?

A.   Yes.

Q.   And what was her response?

A.   That Sunday.

Q.   And did you understand that to mean that just the day before?

A.   Yes.

Q.   Did she tell you what part of her body her Uncle Sergio had touched?

A.   Yes.

Q.   And what did she say?  What part of the body?

A.   Where she had bowel movements.

Q.   And did you conclude from that, that was her anus?

A.   Yes, because I explained which - - where one did number one and where one did number two.

Q.   And she told you it was where - - well, what did she tell you, one or two?

A.   Where she goes her number two.

Q.   Did you ask here or did she tell you with what did he touch her anus with, an instrument or what?

A.   Yes.  She told me by herself, but with the finger.

Q.   With her finger or with Sergio's finger?

A.   With Sergio's finger.

Q.   Did she state - - tell you if it hurt or not?

A.   Yes.  That it hurt her.[9]

The State was prepared to question V.M. through an interpreter in Spanish because she "preferred Spanish," but the trial court ordered the State to conduct V.M.'s direct examination in English after it found that

---

[9] Trial Tr., vol. 2, 224–26 (direct examination of Alma Andrade).

she "understands English."[10]  During direct examination, V.M. testified

that her "aunt" had assaulted her:

> Q.   Do you remember sleeping on your cousin's bed?
> A.   Yes.
>
> . . . .
>
> Q.   What woke you up?
> A.   The finger.
> Q.   Okay.  The finger.  Where was the finger touching you?
> A.   In my body.
>
> . . . .
>
> Q.   Is that where you go number two?
> A.   Yes.
> Q.   Did it hurt?
> A.   Yes.
> Q.   Did you look up to see whose finger it was?
> A.   Yes.
> Q.   Whose finger was it?
> A.   My aunt.
>
> . . . .
>
> Q.   Okay.  And was it a man, a boy of a girl's face?
> A.   Boy.
> Q.   And, so, when you told me before that it was your aunt, you weren't really telling the truth, were you?
> A.   I was telling the truth.
> Q.   So your aunt is a man?
> A.   (Nodding head affirmatively.)
> Q.   Okay.  The face that had alcohol on it, was it your uncle that you love?
> A.   Yes.

_____

[10] Trial Tr., vol. 4, 93 (testimony of V.M.).

-6-

Q.   And his name is Sergio?
A.   Yes.[11]

Nurse Justice testified that during her examination of V.M., she located a "[l]aceration slash tear, approximately, one millimeter" in V.M.'s anus.[12]  She explained that such a tear was usually caused by a blunt object coming into contact with the skin, as opposed to a cut, which was consistent with a sharp object coming into contact with the skin.  Nurse Justice opined that V.M.'s injury was consistent with a digital penetration.[13]  Nurse Justice also noted that V.M. reported to her during the examination that the perpetrator was her uncle.[14]

Ramirez testified in his own defense.  He admitted that he attended a family cookout at the Vargas' house on April 27, 2008.  He claimed that he drank three or four beers while at the gathering, but denied putting his finger in V.M.'s anus.  He added that he did not know why V.M. would make up such an allegation.

Maria Vargas testified that she hosted a family gathering on April

---

[11] Trial Tr., vol. 4, 98–101 (direct examination of V.M.).

[12] Trial Tr., vol. 4, 57 (direct examination of Kathleen Justice ).

[13] Trial Tr., vol. 4, 61 (direct examination of Kathleen Justice ).

[14] Trial Tr., vol. 4, 52 (direct examination of Kathleen Justice ).

27, 2008, and believed that V.M. was lying.  Her daughter, Patty Vargas, affirmed that V.M. sometimes slept in her bedroom, but claimed that she had locked the door that day to keep out other relatives.  Ramirez's father, Jesus Ramirez, testified that he knew his son could not commit the act alleged in the indictment, and did not know why V.M. had made up such an allegation.

After hearing the evidence and arguments of counsel, the jury found Ramirez guilty.  On October 5, 2009, the trial court sentenced Ramirez to ten years' imprisonment within the Texas Department of Criminal Justice.

In his direct appeal, Ramirez raised three issues related to the oral statement he gave to law enforcement officers at the time of his arrest.  In his first issue, he argued that the trial court erred in allowing the State to impeach him with a written English translation of his oral Spanish statement.  Ramirez argued that the translation, prepared by a translator who did not testify at trial, added an impermissible layer of hearsay.  In his second issue, Ramirez argued that the trial court erred when it allowed the State to impeach him with the written English translation of his statement.  Finally, Ramirez argued that the trial court violated his Fourteenth Amendment right to due process when the court allowed the State to impeach him with the

written translation. The Texas Eighth Court of Appeals rejected Ramirez's arguments and affirmed his conviction.[15] The Texas Court of Criminal Appeals refused Ramirez's petition for discretionary review.[16]

More than a year later, Ramirez once again challenged his conviction in a state application for writ of habeas corpus. In his application, Ramirez raised five issues. First, he asserted that he was actually innocent because V.M. "never told anyone in authority . . . that 'Sergio Ramirez' sexual[ly] assaulted her, and thus the State violated [his] Right to Due Process . . . by taking him to Trial, without a lawful complaint."[17] Second, he argued that his counsel provided ineffective assistance because the prosecutor told his counsel before trial that the child victim did not know who had sexually assaulted her, but at trial "the State's Prosecutor put[ ] words in the mouth of a child victim which falls clearly outside the common practice of law," and his counsel "fail[ed] to object to the State's improper questioning."[18] Third, he

---

[15] *Ramirez v. State*, No. 08-09-00286-CR, 2011 WL 4067927 (Tex. App.–El Paso Sept. 14, 2011).

[16] *Ramirez v. State*, No. PDR 0260-12 (Tex. Crim. App. May 9, 2012).

[17] State Writ R. 17, *Ex parte Ramirez*, WR-80,087-01.

[18] *Id.* at 18.

claimed that the prosecutor engaged in misconduct "by using the power of the [District Attorney's] Office to prosecute this case outside the scope of law" and taking "him to Trial even in the absence of a formal complaint . . . by the complaining witness as required by law."[19] Fourth, he contended that the trial court abused its discretion when it failed "to 'sua sponte' dismiss the case, or declare a 'mistrial' . . . when asked by the State . . . '[w]hose finger was it' [and] the child witness then said 'my aunt.' "[20]  Finally, he argued that the State violated his due process rights when the prosecutor improperly impeached him with a written English translation of his oral statement made in Spanish after his arrest.[21]  The Texas Court of Criminal Appeals denied the application without written order on October 2, 2013.[22]  The instant federal petition followed on October 8, 2013.[23]

---

[19] *Id.* at 19.

[20] *Id.* at 20.

[21] *Id.* at 21.

[22] *See id.*

[23] *See Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998) (explaining that a federal petition is filed on the date it is placed in the prison mail system).

Mindful of Ramirez's pro se status,[24] the Court understands him to now assert four grounds for relief.  First, he claims that the prosecutor engaged in misconduct when he told his counsel before trial that the child victim did not know who had sexually assaulted her, but used leading questions during trial to get the child victim to suggest that Ramirez had sexually assaulted her.[25]  Second, he maintains that the trial court abused its discretion when it did not declare a mistrial after the child victim indicated that her aunt had sexually assaulted her.[26]  Third, Ramirez suggests that the State violated his due process rights when it obtained an indictment without first receiving a complaint from the child victim.[27]  Finally, he asserts that his counsel provided constitutionally ineffective assistance when he failed to request a directed verdict after the child victim testified her aunt had

---

[24] *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding pro se pleadings to less stringent standards than formal pleadings drafted by lawyers); *see also Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985) (explaining liberal construction allows active interpretation of a pro se pleading to encompass any allegation which may raise a claim for federal relief).

[25] Pet'r's Pet. 6.

[26] *Id.*

[27] *Id.* at 7.

sexually assaulted her or to object when the prosecutor used leading questions to get the child victim to suggest that Ramirez had sexually assaulted her.[28]

## APPLICABLE LAW

"[C]ollateral review is different from direct review,"[29] and the writ of habeas corpus is "an extraordinary remedy"[30] reserved for those petitioners whom "society has grievously wronged."[31]  It "is designed to guard against extreme malfunctions in the state criminal justice system."[32]  It provides an important, but limited, examination of an inmate's conviction and sentence.[33]  Accordingly, the federal habeas courts' role in reviewing state prisoner petitions is exceedingly narrow. "Indeed, federal courts do not sit as courts of appeal and error for state

---

[28] *Id.*

[29] *Brecht v. Abrahamson*, 507 U.S. 619, 633 (1993).

[30] *Id.*

[31] *Id.* at 634.

[32] *Id.* (citing Justice Stevens's concurrence in *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).

[33] *See Harrington v. Richter*, 562 U.S. 86, 88 (2011) ("[S]tate courts are the principal forum for asserting constitutional challenges to state convictions.").

court convictions."[34]  They must generally defer to state court decisions on the merits[35] and on procedural grounds.[36]  They may not grant relief to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present.[37]

A federal court can only grant relief if "the state court's adjudication of the merits was 'contrary to, or involved an unreasonable application of, clearly established Federal law,' "[38] or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[39]  The focus of this well-developed standard "is not whether a federal court believes the state court's determination was incorrect but whether that

---

[34] *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986).

[35] *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002).

[36] *Coleman v. Thompson*,  501 U.S. 722, 729–30 (1991); *Muniz v. Johnson*, 132 F.3d 214, 220 (5th Cir. 1998).

[37] *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996).

[38] *Berghuis v. Thompkins*, 560 U.S. 370, 378 (2010) (quoting 28 U.S.C. § 2254(d)(1)).

[39] 28 U.S.C. § 2254(d)(2) (2012).

determination was unreasonable—a substantially higher threshold."[40]

Moreover, the federal court's focus is on the state court's ultimate legal conclusion, not whether the state court considered and discussed every angle of the evidence.[41] Indeed, state courts are presumed to know and follow the law.[42] Factual findings, including credibility choices, are entitled to the statutory presumption, so long as they are not unreasonable "in light of the evidence presented in the State court proceeding."[43] Further, a state court's factual determinations enjoy a presumption of correctness which the petitioner can rebut only by clear and convincing evidence.[44] The presumption of correctness applies not only to express findings of fact, but also to "unarticulated findings which are necessary to the state court's conclusions of mixed law and

---

[40] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[41] *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc); *see also Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002) ("we review only the state court's decision, not its reasoning or written opinion").

[42] *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

[43] § 2254 (d)(2).

[44] § 2254(e)(1); *see Clark v. Quarterman*, 457 F.3d 441, 444 (5th Cir. 2006) (noting that a state court's determination under § 2254(d)(2) is a question of fact).

fact."[45]

In sum, the federal writ serves as a "guard against *extreme malfunctions* in the state criminal justice systems," not as a vehicle for error correction.[46] "If this standard is difficult to meet, that is because it was meant to be."[47]

## ANALYSIS

### A.    Prosecutorial Misconduct

Ramirez first claims the prosecutor sent a letter to his counsel before trial which confirmed that the child victim, V.M., had never made a "legal complaint" to law enforcement authorities that he had improperly touched her.[48] Moreover, V.M. testified at trial that her "aunt" had wrongfully touched her.  Only after the prosecutor used leading questions, did V.M. claim that Ramirez had sexually assaulted her.

The record shows that the prosecutor did send a letter to Ramirez's counsel concerning the child victim, V.M., on January 29,

---

[45] *Valdez v. Cockerel*, 274 F.3d 941, 948 n.11 (5th Cir. 2001).

[46] *Harrington*, 562 U.S. at 102 (citation omitted) (emphasis added).

[47] *Id.*

[48] Pet'r's Pet. 6.

2009.[49]  In the letter, the prosecutor explained that when he asked V.M. "what had occurred between her and her uncle in that bedroom on 4/27/08[,] Her response was 'I do not remember.' "[50]  At trial on September 30, 2009, however, the prosecutor used leading questions to get V.M. to identify Ramirez as the person who had sexually assaulted her on April 27, 2008.[51]  While the record does not show what occurred between January and September of 2009, it does show that the State called multiple witnesses at Ramirez's trial, including V.M., V.M's mother, V.M.'s sister, three law enforcement officers, and a nurse examiner.  In addition, Ramirez testified and presented other witnesses in his defense.  After hearing all the testimony of all the witnesses, the jury found Ramirez guilty.

Texas Rule of Evidence 611 provides that "[l]eading questions should not be used on the direct examination of a witness *except as may be necessary to develop the testimony of the witness.*"[52]  Accordingly, Texas courts only permit leading questions in limited situations—such

---

[49] Trial Tr., vol. 1, 36.

[50] *Id.*

[51] Trial Tr., vol. 4, 98–101 (direct examination of V.M.).

[52] Tex. R. Evid. 611(c) (emphasis added).

as during the direct examination of child witnesses.[53]   Additionally,
Texas state courts have long held that leading questions posed to
witnesses who lacked fluency in, or possess a "limited command of," the
English language did not constitute reversible error.[54]

The Fifth Circuit recognizes that Federal Rule of Evidence
611—the federal counterpart to the Texas rule—allows a prosecutor to
ask leading questions when the victim-witness is both young and
nervous.[55]   Moreover, the Advisory Committee's note for Rule 611
suggests that a court should allow leading questions where the witness

---

[53] *Clark v. State*, 952 S.W.2d 882, 886 (Tex. App.–Beaumont 1997)
("In cases dealing with child witnesses, the rule against leading
questions is somewhat relaxed.") (citing *Moon v. State*, 856 S.W.2d 276,
279 (Tex. App.–Fort Worth 1993, pet. ref'd)); *see also Uhl v. State*, 479
S.W.2d 55, 57 (Tex. Crim. App. 1972) ("The asking of leading questions
is seldom a ground for reversal (especially where a child is testifying).").

[54] *Brown v. State*, 640 S.W.2d 275, 279–80 (Tex. Crim. App. 1982);
*see Hernandez v. State*, 643 S.W.2d 397, 400 (Tex. Crim. App. 1982)
("[L]eading questions may be permitted when the witness has difficulty
in understanding the English language[.]").

[55] *United States v. Carey*, 589 F.3d 187, 192 (5th Cir. 2009)
("Carey's Rule 611 challenge fails because our circuit has held that a
victim-witness's youth and nervousness can satisfy Rule 611's necessity
requirement.") (citing *Rotolo v. United States*, 404 F.2d 316, 317 (5th
Cir. 1968) (allowing the government to lead a fifteen-year-old witness
who appeared "reluctant," "nervous," and "upset")).

(1) "is hostile, unwilling, or biased;" (2) is a child or an adult with a communication problem; (3) has exhausted his recollection; or (4) is answering questions concerning "undisputed preliminary matters."[56]

Here, the record reflects that V.M. was a nervous, nine-year-old child at the time of the trial.  The record also shows that initially the State was prepared to question V.M. through an interpreter in Spanish because she "preferred Spanish," but the trial court found that she "understands English."[57]  In turn, the trial court ordered the State to conduct V.M.'s direct examination in English.[58]  V.M.'s responses to the prosecutor's questions indicate that she had some difficulty understanding and communicating in English.[59]  The record supports the State's use of leading questions due to V.M.'s tender age and lack of

---

[56] Fed. R. Evid. 611, advisory committee's note, (Proposed Rules 1972).

[57] Trial Tr., vol. 4, 93 (testimony of V.M.).

[58] Trial Tr., vol. 4, 93 (testimony of V.M.).

[59] Trial Tr., vol. 4, 95 (direct examination of V.M.) (responding with, "Just we talk," and "I don't understand you."); 98-101 (repeatedly affirming her aunt had touched her, and later indicating she has consistently told her family "it was [her] aunt who had the finger" that had touched her, and her aunt was a man).

fluency in English.[60]

Furthermore, prosecutorial error, when alleged in habeas corpus proceedings, is reviewed to determine whether it "'so infected the [trial] with unfairness as to make the resulting [conviction] a denial of due process.'"[61] This means that the alleged conduct must render the trial fundamentally unfair within the meaning of the Due Process Clause of the Fourteenth Amendment.[62] "To constitute a due process violation, the prosecutorial misconduct must be of 'sufficient significance to result in the denial of the defendant's right to a fair trial.'"[63] In turn, a trial will not be deemed fundamentally unfair unless "'there is a reasonable probability that the verdict might have been different had the trial been properly conducted.'"[64] Only in the most egregious situations will

-------------------

[60] *Clark*, 952 S.W.2d at 886; *Uhl*, 479 S.W.2d at 57; *Brown*, 640 S.W.2d at 279–80; *Hernandez*, 643 S.W.2d at 400.

[61] *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000) (quoting *Ables v. Scott*, 73 F.3d 591, 592 n.2 (5th Cir. 1996).

[62] *Darden v. Wainwright*, 477 U.S. 168, 180–81 (1986); *Dowthitt v. Johnson*, 230 F.3d 733, 755 (5th Cir. 2000).

[63] *Greer v. Miller*, 483 U.S. 756, 765 (1987) (quoting *United States v. Bagley*, 473 U.S. 667, 676 (1985)).

[64] *Barrientes*, 221 F.3d at 753 (quoting *Foy v. Donnelly*, 959 F.2d 1307, 1317 (5th Cir. 1992).

a prosecutor's improper conduct violate constitutional rights.[65]

In this case, V.M. was not the only State witness.  The State called other witnesses and presented evidence to the jury to prove that Ramirez perpetrated the assault.  Thus, Ramirez cannot show that the State's examination of V.M., standing alone, "so infected the trial with unfairness as to make the resulting conviction a denial of due process."[66]  Ramirez has not met his burden of showing the prosecutor's purported misconduct—the use of leading questions to illicit answers from a child victim—resulted in the denial of his right to a fair trial.

Furthermore, the Texas Court of Criminal Appeals implicitly applied Texas law to this issue when it denied Ramirez's state habeas application which raised the same issue.[67]  Again, it "is not the province of a federal habeas court to reexamine state-court determinations on state-law questions," but rather, "to decid[e] whether a conviction violated the Constitution, laws, or treaties of the United States."[68]  Ramirez has not shown by clear and convincing evidence that "the state

---

[65] *Ortega v. McCotter*, 808 F.2d 406, 410–11 (5th Cir. 1987).

[66] *Darden*, 477 U.S. at 181.

[67] State Writ R. 18, *Ex parte Ramirez*, WR-80,087-01.

[68] *Estelle*, 502 U.S. at 67–68.

court's adjudication of the merits was 'contrary to, or involved an unreasonable application of, clearly established Federal law,' "[69] or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[70]  The Texas Court of Criminal Appeals' determination of state law is binding on the Court.[71]

Ramirez is not entitled to § 2254 relief on this claim.

## B.    Abuse of Discretion by the Trial Court

Ramirez next claims that the trial court erred when it failed to declare a mistrial or order a directed verdict when the child victim, V.M., testified that her aunt had sexually assaulted her.  This claim also lacks merit.

Under Texas state law, a trial court may declare a mistrial *sua sponte* only when manifest necessity exists.[72]  "Manifest necessity exists when the circumstances render it impossible to arrive at a fair verdict,

---

[69] *Berghuis*, 560 U.S. at 378 (quoting § 2254(d)(1)).

[70] § 2254(d)(2).

[71] *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

[72] *Torres v. State*, 614 S.W.2d 436, 442–43 (Tex. Crim. App. [Panel Op.] 1981); *Hill v. State*, 90 S.W.3d 308, 317 (Tex. Crim. App. 2002).

when it is impossible to continue with trial, or when the verdict would be automatically reversed on appeal because of trial error."[73]

Here, V.M.'s responses to the prosecutor's leading questions are hardly extraordinary. They more likely reflect her anxiety, youth, and lack of English fluency. Moreover, any inconsistencies or contradictions in testimony are a matter for the jury, not the trial court, to resolve.[74] Because it is the province of the jury "to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts,"[75] Ramirez cannot demonstrate that manifest necessity arose when V.M. misstated that her aunt had assaulted her which would have permitted the trial court to order, *sua sponte*, a directed verdict or a mistrial.

A trial court error must do more than merely affect the verdict to warrant relief; it must render the trial, as a whole, fundamentally unfair.[76] Significantly, on federal habeas review of a state court

---

[73] *Hill*, 90 S.W.3d at 313 (citing *Brown v. State*, 907 S.W.2d 835, 839 (Tex. Crim. App. 1995)).

[74] *Little v. Butler*, 848 F.2d 73, 76 (5th Cir. 1988).

[75] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

[76] *Bailey v. Procunier*, 744 F.2d 1166, 1168 (5th Cir. 1984).

conviction, a federal harmless error standard applies.[77]  Thus, to be actionable, the trial court error must have " 'had substantial and injurious effect or influence in determining the jury's verdict.' "[78] Under this standard, a petitioner is not entitled to federal habeas relief based on trial error unless he can establish that the error resulted in actual prejudice.[79]  Ramirez has not shown that allowing the jury to hear and consider V.M.'s misstatement prejudiced his cause.  Admitting the testimony did not render the trial, as a whole, fundamentally unfair.

More importantly, Ramirez has failed to demonstrate that the state court's rejection of this claim was contrary to, or involved the unreasonable application of federal law.[80]  The Texas Court of Criminal Appeals' determination of state law is binding on the Court.[81]

For all of these reasons, Ramirez is not entitled to § 2254 relief on

---

[77] *Brecht*, 507 U.S. at 637–38.

[78] *Id.* at 637 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

[79] *Id.*

[80] § 2254(d); *Harrington*, 562 U.S. at 101.

[81] *Bradshaw*, 546 U.S. at 76.

this claim.

## C.   Denial of Due Process

Ramirez also maintains that the State violated his due process rights when it obtained an indictment without first receiving a complaint from the child victim.  He asserts that "[i]n order to prosecute, the [S]tate is required to obtain a statement from the alleged child victim that a criminal act occurred . . . in this case this did not happen."[82]

Under Texas law, the requirement listed by Ramirez as the prerequisite for the State to proceed against a defendant—a statement from the alleged victim that a criminal act occurred—is applicable only when a defendant is charged by an instrument known as an "information" based upon a complaint.[83]  The State charged Ramirez by indictment—an instrument defined within the Texas Code of Criminal Procedure as "the written statement of a grand jury accusing a person therein named of some act or omission which, by law, is declared to be

---

[82] Pet'r's Pet. 7.

[83] Tex. Code Crim. Proc. art. 21.20 (West 2008) ("An 'information' is a written statement filed and presented in behalf of the State by the district or county attorney, charging the defendant with an offense which may by law be so prosecuted.").

an offense."[84]  Thus, the alleged deficiencies cited by Ramirez with regard to a "legal complaint" simply do not apply to the charging instrument brought against him.

The Texas Court of Criminal Appeals implicitly applied Texas law to this issue when it denied Ramirez's claim in his state habeas proceedings.  This determination of state law is binding on this Court, and it is well settled that federal courts do not function to review a state's interpretation of its own laws.[85]

Ramirez is not entitled to relief on this claim.

## D.   Ineffective Assistance of Counsel

Finally, Ramirez claims that his counsel provided constitutionally ineffective assistance when he failed to request a directed verdict after the child victim testified her aunt had sexually assaulted her or to object when the prosecutor used leading questions to get the child victim to suggest that Petitioner had sexually assaulted her.

To prove an ineffective-assistance-of-counsel claim, a petitioner must satisfy both prongs of the test announced in *Strickland v.*

---

[84] *Id.* art. 21.01.

[85] *Bradshaw*, 546 U.S. at 76 (citations omitted).

*Washington*[86] by showing not only constitutionally deficient performance by counsel, but also actual prejudice to his legal position.[87] The Court need not address both components if the petitioner makes an insufficient showing on one.[88] To demonstrate deficiency, a petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."[89] A court considering such a claim "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance."[90] To demonstrate prejudice, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[91] A mere allegation of prejudice is not sufficient

---

[86] *Strickland v. Washington*, 466 U.S. 668, 689–94 (1984).

[87] *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (summarizing the *Strickland* standard of review).

[88] *Strickland*, 466 U.S. at 687.

[89] *Id.* at 687.

[90] *Harrington*, 562 U.S. at 104 (citation omitted).

[91] *Porter v. McCollum*, 558 U.S. 30, 38–39 (2009) (internal quotation marks and citation omitted).

to satisfy the prejudice prong of *Strickland*.[92]  The probability "of a different result must be substantial, not just conceivable."[93]  Thus, counsel's performance is entitled to "a heavy measure of deference" by a reviewing court.[94]

The Court must review a petitioner's ineffective-assistance-of-counsel claim "through the deferential lens of [28 U.S.C.] § 2254(d),"[95] and consider not only whether the state court's determination was incorrect, but also "whether that determination was unreasonable—a substantially higher threshold."[96]  Thus, in light of the deference accorded by § 2254(d), "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable":[97]

> The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in

---

[92] *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994).

[93] *Harrington*, 562 U.S. at 112.

[94] *Cullen v. Pinholster*, 131 S.Ct. 1388, 1408 (2011) (internal quotation marks and citation omitted).

[95] *Id.* at 1403.

[96] *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citing *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

[97] *Harrington*, 562 U.S. at 101.

tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.[98]

The record belies Ramirez's claims. It shows that his attorney did object to the leading questions and did move for a directed verdict at the conclusion of V.M.'s testimony.[99] The trial court, in all but one case, overruled the objections. The trial court also denied the motion for a directed verdict. The fact that his counsel's efforts were not successful does not render his performance unconstitutionally deficient.[100] "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."[101] Thus, "a court must indulge a strong

---

[98] *Id.* at 105.

[99] Trial Tr., vol. 4, 100, 103, 106, 108.

[100] *See Martinez v. Dretke*, 99 F. App'x 538, 543 (5th Cir. 2004) ("[A]n unsuccessful strategy does not necessarily indicate constitutionally deficient counsel.").

[101] *Strickland*, 466 U.S. at 689.

presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[102]  Ramirez has not "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"[103]

Although the Texas Court of Criminal Appeals denied Ramirez claim without a written order, the Court "(1) assumes that the state court applied the proper 'clearly established Federal law'; and (2) then determines whether its decision was 'contrary to' or 'an objectively unreasonable application of' that law."[104]  Therefore, the Court presumes that the Texas Court of Criminal Appeals denied Ramirez relief without written order, it was aware of and applied *Strickland*, and found that Ramirez's counsel either to not be deficient, or that Ramirez had not been prejudiced by his counsel's performance. Ramirez has failed to provide any of the necessary evidence to rebut these findings.

Ramirez is not entitled to § 2254 relief on this claim.

---

[102] *Id.*

[103] *Id.* (quoting *Michel v. Louisiana.*, 350 U.S. 91, 101 (1955)).

[104] *Schaetzle v. Cockrell*, 343 F.3d 440 (5th Cir. 2003) (quoting *Catalan v. Cockrell*, 315 F.3d 491, 493 & n.3 (5th Cir. 2002)).

## EVIDENTIARY HEARING

A court will hold an evidentiary hearing on a § 2254 petition only when the petitioner shows either (1) the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or (2) a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. Ramirez does not assert that either prerequisite for a hearing exists in his case. The record is adequate to dispose fully and fairly of Ramirez's claims. The Court need inquire no further on collateral review and an evidentiary hearing is not necessary.

## CERTIFICATE OF APPEALABILITY

A petitioner may not appeal a final order in a habeas corpus proceeding "[u]nless a circuit justice or judge issues a certificate of appealability."[105] Further, appellate review of a habeas petition is limited to the issues on which a certificate of appealability is granted.[106]

---

[105] § 2253(c)(1)(B).

[106] *See Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997) (holding that, in regard to the denial of relief in habeas corpus actions, the scope of appellate review is limited to the issues on which a certificate of appealability is granted).

In other words, a certificate of appealability is granted or denied on an issue-by-issue basis, thereby limiting appellate review solely to those issues on which a certificate of appealability is granted.[107] Although Ramirez has not yet filed a notice of appeal, this Court nonetheless must address whether he is entitled to a certificate of appealability.[108]

A certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."[109]  In cases where a district court rejects a petitioner's

---

[107] *See* § 2253(c)(3) (setting forth the narrow scope of appellate review in habeas corpus matters); *see also Lackey*, 116 F.3d at 151 (holding that a certificate of appealability is granted on an issue-by-issue basis, thereby limiting appellate review to those issues); *but see United States v. Kimler*, 150 F.3d 429, 431 n.1 (5th Cir. 1998) ("We have decided, however, that the monolithic nature of [Federal Rule of Appellate Procedure] Rule 22(b) in conjunction with Congress's mandate for issue specificity on collateral review embodied in 28 U.S.C. § 2253(c)(3) requires a more express request.  In order to obtain appellate review of the issues the district court refused to certify, the petitioner must first make the threshold substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).  Only after clearing this hurdle may the petitioner proceed to brief and we review the merits of the rejected issues.").

[108] *See* Rule 11(a), 28 U.S.C. foll. § 2254 ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.").

[109] § 2253(c)(2).

constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[110] To warrant a grant of the certificate as to claims that the district court rejects solely on procedural grounds, the petitioner must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."[111] Here, Ramirez is not entitled to a certificate of appealability because reasonable jurists would not find debatable the Court's conclusions that he has not made a substantial showing of the denial of a constitutional right.  Accordingly, the Court finds that it should deny Ramirez a certificate of appealability.

## CONCLUSION AND ORDERS

The Court concludes that Ramirez is not entitled to § 2254 relief. The Court further concludes that Ramirez is not entitled to a certificate

---

[110] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (applying *Slack* to a certificate of appealability determination in the context of § 2255 proceedings).

[111] *Slack*, 529 U.S. at 484.

of appealability.  Accordingly, the Court enters the following orders:

**IT IS ORDERED** that Ramirez's "Petition for a Writ of Habeas Corpus by a Person in State Custody" under 28 U.S.C. § 2254 (ECF No. 1) is **DENIED**, and his cause is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Ramirez is **DENIED** a certificate of appealability.

**IT IS ALSO ORDERED** that all pending motions are **DENIED AS MOOT**.

**IT IS FINALLY ORDERED** that the Clerk shall **CLOSE** this case.

**SO ORDERED.**

**SIGNED** this ___24___ day of June, 2015.

 

_____
PHILIP R. MARTINEZ
UNITED STATES DISTRICT JUDGE